UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT C. DEBACCO,

        **Plaintiff,**

V.                                     Case No:  2:12-CV-256-FtM-UASPC

JEFFREY T. DEBACCO,
DEVELOPMENT
OPPORTUNITITES, LLC, and
PARK BANK,

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Defendant, Jeffrey T. DeBacco and Development Opportunities, LLC's Motion to Dismiss and for More Definite Statement or, alternatively, Motion to Transfer Venue (Doc. #8) filed on June 8, 2012.  On July 3, 2012, the Plaintiff, Robert C. DeBacco filed his response to the Motion.  (Doc. #12).   The matter was referred to the undersigned by the Honorable Ann C. Conway on June 13, 2012.  (Doc. #9).  Thus, the Motion is now ripe for review.

## I.    FACTUAL BACKGROUND[1]

      On August, 30, 1999, the Plaintiff purchased a condominium at Pointe Estero Condominium (the Condo) on Fort Myers Beach, Florida.  (Doc. #1, P. 2).  After purchasing the Condo in 1999, the Plaintiff obtained a mortgage on the property through SunTrust Bank.  (Doc. #1, p. 2).  In 2001, the Plaintiff and Defendant, Jeffrey T. DeBacco, formed a Wisconsin limited

---

[1] Due to the potential disposition of this action through a favorable ruling on this Motion, the Defendants have not yet answered the Plaintiff's Complaint; thus, most of the factual aversions are taken from Plaintiff's Complaint. (Doc. #1).

liability corporation named Development Opportunities, LLC, which is also a Defendant in this action.  (Doc. #1, p. 2).

In December 2002, the Plaintiff and Defendant, Jeffrey T. DeBacco, personally guaranteed a loan issued by one of the three Defendants in this action, Park Bank, to an entity named Lincoln Plumbing, Inc., for $750,000.  (Doc. #1, p. 3).  After nearly four years, the Defendant, Park Bank, sued Lincoln Plumbing, Inc., in Milwaukee County Circuit Court in Wisconsin to collect the loan personally guaranteed by the Plaintiff and the Defendant, Jeffrey T. DeBacco.  (Doc. #1, p. 3).  The Defendant, Park Bank, attempted to obtain a money judgment against Lincoln Plumbing, Inc., the Plaintiff, and the Plaintiff's wife.  (Doc. #1, p. 3).

During this same year, the Plaintiff alleges that the Defendant, Jeffrey T. DeBacco, "forged the Plaintiff's signature on document . . . purported to be the Plaintiff's resignation as a registered agent of Development Opportunities, LLC, . . . [and filed this] fraudulent document with the Wisconsin Department of Financial Institutions."  (Doc. #1, p. 3).  The Plaintiff attached a copy of the alleged fraudulent document to his Complaint, which after review, seems to indicate that it was "effective as of August 1, 2006."  (Doc. #1, Ex. 1, p. 4).  Moreover, in 2006, SunTrust Bank declared the mortgage and the note associated with the Condo in default and filed an action against the Plaintiff for foreclosure in the Circuit Court of Lee County, Florida.  (Doc. #1, P. 4).

On March, 13, 2007, Defendant Park Bank successfully obtained a judgment against the Plaintiff and the Plaintiff's wife for $735,332.22, for the personally guaranteed loan to Lincoln Plumbing, Inc.  (Doc. #1, p. 4).  Thereafter, on May 9, 2007, Park Bank recorded the foreign judgment in the records of the Circuit Court of Lee County, Florida.  (Doc. #1, p. 4).  Defendant, Park Bank's judgment became the second lien against the Condo, behind SunTrust Bank's first

mortgage.  (Doc. #1, p. 4).  Seven months later, on December 7, 2007, SunTrust assigned its interest in the mortgage and note associated with the Condo to Defendant, Park Bank.  (Doc. #1, p. 4).

After nearly two years, on April 17, 2009, the Plaintiff executed a "Quit Claim Deed in Lieu of Foreclosure," which transferred the Plaintiff's interest in the Condo to Defendant, Development Opportunities, LLC; however, the Defendant did not record this document immediately.  (Doc. #1, p. 4).  The Plaintiff alleges that the Defendant, Jeffrey T. DeBacco, instructed the Plaintiff to conduct the transfer of the interest in the Condo in order to benefit the Defendant, Development Opportunities, LLC.  (Doc. #1, p. 4).  Furthermore, the Plaintiff alleges that the Defendant, Jeffrey T. DeBacco, promised the Plaintiff that "there would be no disbursement from Development Opportunities, LLC, unless and until there was a meeting between [the] Plaintiff and Defendant, Jeffrey T. DeBacco, and an agreement between them on any disbursement."  (Doc. #1, p. 5).  The Plaintiff contends that he was receiving approximately $35,000 in annual rental income from the Condo at the time of the transfer to the Defendant, Development Opportunities, LLC.  (Doc. #1, p. 5).

On August 6, 2009, the Defendant, Park Bank, assigned its judgment to the Defendant, Development Opportunities, LLC, for $514,000.  (Doc. #1, P. 5).  Less than a month later, on August 25, 2009, the Defendant, Jeffrey T. DeBacco recorded the "Quit Claim Deed in Lieu of Foreclosure" in the Public Records of Lee County, Florida, which transferred the Plaintiff's interest in the Condo to the Defendant, Development Opportunities, LLC.  (Doc. #1, p. 5).  In May 2010, the Defendant, Development Opportunities, LLC, sold the Condo for $415,000 to a third-party buyer, who resided in New York.  (Doc. #1, p. 5; Doc. #1-1, p. 19).  The Plaintiff alleges that the Defendant, Jeffrey T. DeBacco, "received all of the net proceeds from this sale

from Development Opportunities, LLC, . . . and shortly after dissolved Development Opportunities, LLC, as a corporate entity" (Doc. #1, p. 5).

## II.   DISCUSSION

Plaintiff alleges diversity as the basis of this Court's subject matter jurisdiction, as well as supplemental jurisdiction.   In this Motion, Defendants Jeffrey T. DeBacco and Development Opportunities, LLC, contend that the instant Action should be dismissed for several reasons. First, the Defendants state that the Court lacks personal jurisdiction over the Defendants, Jeffrey T. DeBacco and Development Opportunities, LLC.  Specifically, the Defendant contends that the "Plaintiff fails to identify any section of the Florida [L]ong-[A]rm Statute that would provide grounds for asserting jurisdiction over these [two] Defendants."  (Doc. #8, p. 6).  Second, the Defendants state that the Plaintiff fails to comply with Fed. R. Civ. P. 9(b), requiring particularity when a party's pleading includes fraud allegations and requests a more definite statement.  Specifically, the Defendants contend that "the Plaintiff fails to provide the date of the alleged fraud and when he discovered the alleged fraud." (Doc. #8, p. 8).  Third, the Defendants contend that the Plaintiff fails to state a claim as to the Racketeer Influenced and Corrupt Organizations (RICO) allegation.  Specifically, the Defendants states that "in order to meet the pleading specificity of a RICO claim, [the] Plaintiff must either allege the date, time, place, and content of the alleged fraud or may 'use alternative means of injecting precision and some measure of substantiation into . . . its allegations of fraud." (Doc. #8, p. 11).  Fourth, and finally, the Defendants contend that the action should be dismissed for improper venue, or in the alternative, that this case be transferred to the United States District Court for the Eastern District of Wisconsin, Milwaukee Division.  (Doc. #8, p. 9).

## A. <u>Personal Jurisdiction</u>

Defendants argue that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over the Defendants.  Defendants assert that the "Plaintiff fails to identify any section of the Florida [L]ong-[A]rm [S]tatute that would provide grounds for asserting jurisdiction over [the] Defendants."  (Doc. #8, p. 6).  The Plaintiff contends that the Florida Long-Arm Statute is satisfied through the Defendants committing a tort, namely fraud, against the Plaintiff, which creates a substantial connection with the forum. (Doc. #12, p. 4).

There are two types of personal jurisdiction, general and specific.  In determining whether a court can exercise personal jurisdiction over a nonresident defendant, the Eleventh Circuit has held that "[a] federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute *and* (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009) (emphasis added).  <u>See also</u> <u>Knights Armanent Co. v. Optical Systems Tech.</u>, No. 6:07-cv-1323-ORL-22KRS, 2008 WL 2157108, *1 (M.D. Fla. May 21, 2008) ("The Court must consider whether a non-resident defendant falls within the reach of Florida's long-arm statute as well as whether the exercise of jurisdiction over the defendant satisfies due process.").  General jurisdiction arises from continuous and substantial contacts with the forum, while specific jurisdiction is founded on a party's contacts with the forum that are related to the cause of action. The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  <u>Mazer</u>, 556 F.3d at 1274.  A prima facie case is established if plaintiff alleges enough facts to withstand a motion for

directed verdict.  Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000); SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997).  "The plaintiff bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' only if the defendant challenging jurisdiction files 'affidavits in support of his position.'"  Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999) (quoting Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989)).  "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  In the present case, the Defendants have not filed any affidavits concerning the jurisdiction issue; accordingly, the Court will accept the allegations in the Complaint as true.

### 1.  Florida Long-Arm Statute

Plaintiff does not cite the Florida personal jurisdiction statute in his Complaint and only briefly mentions general jurisdiction in his response.  With regard to long-arm jurisdiction, "the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute."  Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 583 (M.D. Fla. 1991) (citing Polskie Linie Oceaniczne v. Seasafe Transport, 795 F.2d 968 (11th Cir. 1986)).  "If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  Id.  Thus, in order to determine whether this Court retains personal jurisdiction over the Defendants, the Court must first evaluate Florida's Long-Arm Statute.

The Florida long-arm statute provides for both specific and general jurisdiction.  To establish specific jurisdiction under Florida Statutes § 48.193(1), plaintiff must allege that the non-resident defendant caused injury to persons or property within Florida from a place outside of Florida.  The following acts convey personal jurisdiction under the long-arm statute: (a) operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida; (b) committing a tortious act in Florida; (c) owning, using, possessing, or holding a mortgage or other lien on any real property in Florida; (d) contracting to insure any person, property, or risk located within Florida at the time of contracting; (f) causing injury to persons or property within Florida arising out of an act or omission by the defendant outside of Florida, if, at the time of the injury either the defendant was engaged in solicitation or service activities within Florida or products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within Florida; and (g) breaching a contract in Florida by failing to perform acts required by the contract to be performed in Florida.  Fla. Stat. § 48.193(1).

In this case, the Plaintiff's Complaint and Brief fail to address which section of the Florida specific jurisdiction statute is relied upon for jurisdiction over the Defendants.  The specific jurisdiction section of Florida's Long-Arm Statute which could be applicable to this case state in pertinent part:

(1) [a]ny person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)-(b).  In addressing subsection (a) of the specific jurisdiction section in Florida's Long-Arm Statute, the Eleventh Circuit held that in order "to establish court's specific jurisdiction under § 48.193(1)(a), . . . a nonresident defendant's activities 'must . . . show a general course of business activity in the State for pecuniary benefit.'"  Id. at 848 (citing Dinsmore v. Martin Blumenthal Assocs., 314 So.2d 561, 564 (Fla. 1975)).  Furthermore, "solicitation is one factor [that] the courts consider in deciding whether a company is conducting business in' Florida." Id. at 848 (citing Citicorp Ins. Brokers, Ltd. v. Charman, 635 So.2d 79, 81 (Fla. Dist. Ct. App. 1994)).

When these factors are applied to the instant case, the Court recommends that the Defendants failed to maintain the necessary contacts to satisfy subsection (a) of the specific jurisdiction section in the Florida Long-Arm Statute.  First, as stated above, there must be a general course of business activity in the State for pecuniary benefit.  It appears in this case that the Defendants were not engaged in a general course of business activity in the State for pecuniary benefit related to this cause of action, namely the Condo transaction.  Defendants' contacts involve receiving and selling an interest in the Condo, which does not evince that the Defendants were conducting a business venture within the State.  Further, while selling the interest in the Condo might appear to be for pecuniary benefit, the Court notes that in order to be able to convey this property to a third party, the Defendant acquired the rights to the second lien on the Condo for $514,000.  Therefore, the Defendant paid $514,000 in order to sell the Condo to a third-party for $415,000.  The Court recommends that sustaining a loss of $99,000 through receiving and conveying an interest in the Condo in Florida does not constitute "a general course of business activity in the State for pecuniary benefit." Therefore, both Defendants failed to

maintain the necessary contacts to sustain subsection (a) of the specific jurisdiction section of the Florida Long-Arm Statute.

The final provision of the Florida Long-Arm Statute that would allow this Court to exercise personal jurisdiction over the Defendants is contained in § 48.193(1)(b), which involves "[c]omitting a tortious act within this state."  This Court notes that Florida courts recognize fraud as satisfying the "tortious act" provision of the Florida Long-Arm Statute.  See Bedsworth v. Rosen, 721 So. 2d 450 (Fla. Dist. Ct. App. 1998); 8100 R.R. Ave. Realty Trust v. R.W. Tansill Const. Co., 638 So. 2d 149, 151 (Fla. Dist. Ct. App. 1994).  However, based on the analysis below, the Court recommends that Plaintiff has failed to plead fraud with particularity as required by Rule 9(b).  Therefore, the Court recommends that the Plaintiff's Complaint as presently pled contains insufficient allegations to satisfy subsection (b) of Florida's long-arm statute.

### 2.  Constitutional Requirements

Even if Plaintiff had made a prima facie showing that personal jurisdiction over Defendants was appropriate under the long-arm statute, personal jurisdiction over the Defendants still must not violate due process.  The Plaintiff briefly mentions Fla. Stat. § 48.193(b)(2) - the general jurisdiction section of the Florida Long-Arm Statute - in his Reply Brief.  Section 48.193(2) of Florida Long-Arm Statutes states: "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  The Eleventh Circuit has held that in order to support the exercise of general jurisdiction under Section 48.193(2) of the Florida Long-Arm Statute, the "defendant's contacts with the forum must be . . .continuous and systematic."  Fraser v. Smith, 594 F.3d 842, 846 (11th

Cir. 2010) (internal punctuation omitted).  "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."  <u>Fraser v. Smith</u>, 594 F.3d 842, 846 (11th Cir. 2010) (citing <u>Woods v. Nova Cos. Belize</u>, 739 So.2d 617, 620 (Fla. 4th DCA 1999)).  In considering the minimum contacts as required by the due process clause of the United States Constitution, the Eleventh Circuit noted:

> Therefore, in order to determine whether the due process clause permits the exercise of personal jurisdiction over Lovelady, we must assess whether he has purposefully established such constitutionally significant contact with the state of Florida that he could have reasonably anticipated that he might be sued here in connection with those activities. If so, we must consider whether the forum's interest in this dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend himself in a Florida court.

<u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1285 (11th Cir. 2008).

The Middle District of Florida has recognized that "a number of courts" have held that "where a defendant's tortuous conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum."  <u>New Lenox Industries v. Fenton</u>, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).  In that case, the plaintiff had alleged fraud and misappropriation of trade secrets, and the district court held that jurisdiction was proper inasmuch as "Plaintiff alleges that Defendants committed one or more intentional torts ... against Plaintiff who was injured in Florida."  <u>Id.</u> at 904-05.  But in this case, the Court has recommended that Plaintiff has not properly pled the tort of fraud which he alleges occurred in Florida.  Therefore, the minimum contacts requirement is not met in this regard.

The Court further examines though whether Defendants engaged in substantial and not isolated activity in Florida, such that the Defendants could reasonably anticipate being haled into

court here.  The Defendant, Development Opportunities, LLC's contact with Florida included receiving the Plaintiff's interest in the Condo and subsequently selling that interest to a third party.  During this transaction, Plaintiff alleges that Defendants committed the tort of fraud.  The Plaintiff further alleges that a substantial part of the events giving rise to the claims occurred in Florida because the Plaintiff eventually transferred the Condo while residing in this State.  The Court agrees that many of the events took place in Florida with regard to the Condo transaction, including the recordation of the foreign judgment by Park Bank in Lee County, Florida, the recordation of the Quit Claim Deed in Lee County Florida by Jeffrey T. DeBacco, the Note and Mortgage were assigned from SunTrust to Park Bank and then from Park Bank to Development Opportunities, LLC in Lee County, Florida, the Warranty Deed when the Condo was sold to a third-party was prepared in Lee County, Florida, and finally, the Condo was located in Lee County, Florida.  Thus, the Court recommends that based on Plaintiff's Complaint, Defendants have had sufficient contact with Florida and those contacts were directed towards Plaintiff, and were regarding the Condo, which was located in Florida, such that the minimum contacts requirement is satisfied.

## B. __Motion for More Definite Statement as to Fraud Count__

As to the Defendants' Motion for More Definite Statement on Plaintiff's fraud count (Count II), the Defendants argue that the Plaintiff "fails to provide the date of the alleged fraud and when [the Plaintiff] discovered the alleged fraud."  (Doc. #8, p. 8).  Specifically, the Defendants point to Fed. R. Civ. P. 9(b), which requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The Plaintiff argues that the Complaint satisfies the fraud pleading requirements as set out in Fed. R. Civ. P. 9(b), and therefore the Defendants' Motion should be denied.

While discussing Rule 9(b), the Eleventh Circuit has held that Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997). Furthermore, in addressing what a plaintiff must plead to sufficiently allege fraud under Rule 9(b), the Eleventh Circuit held that "the Plaintiffs must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Id. at 1380-81.

The Plaintiff's first allegation of fraud, which is located in the "Facts" section of the Complaint, states that "[a]t some unknown point, Defendant Jeffrey T. DeBacco forged the Plaintiff's signature on a document entitled 'Resignation,' which [was] . . . purported to be the Plaintiff's resignation as a registered agent of Development Opportunities, LLC, and Defendant Jeffrey T. DeBacco then filed this forged document with the Wisconsin Department of Financial Institutions." (Doc. #1, p. 3). Based on the standard provided above, it appears that the Plaintiff failed to satisfy the requirements of Rule 9(b) with this first allegation of fraud. Specifically, the Plaintiff fails to address three of the specificity factors set out by the Eleventh Circuit. First, the Plaintiff fails to allege with specificity the time and place of when the alleged first instance of fraud occurred as required in factor two. Second, the Plaintiff fails to satisfy factor three, which requires that the Plaintiff allege with specificity the content and manner in which the Plaintiff was misled. By simply alleging that the Defendant forged and recorded a document, the Plaintiff fails to provide the Court with specific details surrounding the first alleged instance of fraud. Third, the Plaintiff fails to satisfy factor four, which requires the Plaintiff to detail what the

Defendants gained through this first instance of fraud.  As seen in the analysis above, the Eleventh Circuit's factors require a detailed factual background of the alleged fraud, which the Plaintiff failed to provide in the two sentences that compose this first alleged instance of fraud.

Similar to the analysis above, the Court must now analyze whether the Plaintiff properly alleged the second instance of fraud in the Complaint.  As to the first factor, which requires "the precise . . . misrepresentations made," the Plaintiff states that the "Defendants fraudulently, falsely, willfully, unlawfully and/or reckless represented to Plaintiff the following: a) that if Plaintiff transferred [the Condo] to Development Opportunities, LLC, he would receive a benefit therefrom; b) that Plaintiff would maintain his interest as an owner of Development Opportunities, LLC; c) that his co-owner, Jeffrey T. DeBacco, would act in his fiduciary best interest as a co-owner of the corporate entity, Development Opportunities, LLC." (Doc. #1, p. 9-10).

The Eleventh Circuit has held that a plaintiff may not "simply [lump] together all of the Defendants in their allegations of fraud."  Id. at 1381.  Specifically, "in a case involving multiple defendants . . .'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'"  Id. at 1381 (citing Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994)).  Therefore, although the Plaintiff provides the precise misrepresentations made, the Plaintiff fails to identify each Defendant's alleged participation in these misrepresentations.

Therefore, the undersigned recommends that the Defendants' Motion for a More Definite Statement be granted and the Plaintiff allowed to amend Count II of the Complaint to comply with the factors articulated by the Eleventh Circuit, which provide what a plaintiff must allege in order to properly plead fraud under Rule 9(b).

## C. <u>Failure to State a Claim as to the RICO Count</u>

With regard to the Racketeer Influenced and Corrupt Organizations (RICO) Claim (Count I), the Defendants argue that the Plaintiff fails to state a claim upon which relief can be granted. Specifically, the Defendants contend that the Plaintiff failed to properly allege a violation of the RICO Statute, 18 U.S.C. § 1962, which requires that there be more than one racketeering activity and the threat of continuing activity. Moreover, the Defendants further contend that the Plaintiff fails again to meet the pleading specificity of a RICO claim, due to the fact that this RICO claim is based upon fraud. The Plaintiff contends that the claim for violations of the RICO statute was pled with particularity under Rule 9(b).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); <u>Christopher v. Harbury</u>, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The former rule - that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004) - has been retired by <u>Twombly</u>. <u>James River Ins. Co.</u>, 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664, 129 S. Ct. 1937, 1941, 173 L. Ed. 2d 868 (2009). The Court need not accept as true legal conclusions or mere conclusory statements.  <u>Id.</u>  Dismissal is also warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); <u>Brown v. Crawford County, Ga.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

In deciding this Motion to Dismiss, the Court must first determine whether the Plaintiff satisfied the required pleading factors for RICO claims.  The Eleventh Circuit has held that "[s]ection 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant participated in an illegal enterprise 'through a pattern of racketeering activity.'"  <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010).  Furthermore, "[i]n order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity.  <u>Id.</u> at 1290-91 (citing <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 240, 109 S. Ct. 2893, 2901, 106 L. Ed. 2d 195 (1989)).

 In addition, when the Plaintiff's "claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in <u>Twombly</u> and <u>Iqbal</u> but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  <u>Id.</u> at 1291 (internal punctuation omitted).  Courts in this District have held that "pleading a predicate act [,such as wire or mail fraud,] with specificity requires the complaint to

answer the familiar questions of "who, when, where, how, and why."  <u>Florida Software Sys., Inc.</u> <u>v. Columbia/HCA Healthcare Corp.</u>, 46 F. Supp. 2d 1276, 1282 (M.D. Fla. 1999) (citing <u>Delfrate</u> <u>v. Letts</u>, No. 95-185-CIV-T-17, 1996 WL 420880, at *5 (M.D. Fla. 1996)).

In this case, the Court recommends that Plaintiff fails to satisfy the RICO pleading standard established by the Eleventh Circuit.  First, the Plaintiff fails to include factual support for the conclusory claim that "by the use of telephone calls and facsimile transmissions between Florida[,] Wisconsin[,] and Arkansas by the Defendants and/or other persons or entities, as set forth above, constitute violations of 18 U.S.C. §[1341], 18 U.S.C. §1343[,] and 18 U.S.C. §1344 pertaining to mail, wire[,] and bank fraud."  (Doc. #1, ¶ 42).  As shown above, because this RICO claim is based upon fraud, this District requires a "who, when, where, how, and why" relating to the predicate acts.  Therefore, because the Plaintiff simply provides conclusory statements about the predicate acts, the Court is unable to determine whether the requirement that there be two or more predicate acts has been satisfied to allow the RICO claim to stand.

Second, similar to the Rule 9(b) analysis discussed above, the Plaintiff fails to provide the Court with specific factual allegations relating to the fraud elements of the RICO claim.  For example, the Plaintiff again groups all the Defendants together in the allegations, failing to identify each Defendant's specific act.  <u>See</u> <u>Brooks</u>, 116 F.3d at 1381 ("[T]he complaint should inform each defendant of the nature of his alleged participation in the fraud.").  Moreover, the Plaintiff fails to provide any dates or times in the paragraphs that compose the RICO count of the Complaint, as required by the Eleventh Circuit to satisfy Rule 9(b).  <u>See id.</u> at 1371.  Finally, the Plaintiff fails to provide the precise statements, documents, or misrepresentations made by the Defendants relating to the RICO claim.  <u>See id.</u>

Based on the above analysis, the Court recommends that the Plaintiff failed to satisfy the pleading requirements for both RICO and fraud.   Therefore, the Court recommends that the Defendant's Motion to Dismiss for Failure to State a Claim be granted and the Plaintiff's RICO Claim be dismissed without prejudice with leave for Plaintiff to amend his RICO claim.

### D. <u>Venue</u>

Defendants seek dismissal of this action pursuant to Federal Rule 12(b)(3) based upon improper venue.  In the alternative, Defendants argue that this matter be transferred to the United States District Court for the Eastern District of Wisconsin, Milwaukee Division because the "underlying fraudulent actions upon which the Plaintiff bases this lawsuit occurred in Wisconsin and were performed by Wisconsin Residents."  (Doc. #8, p. 10).   The Plaintiff counters that "[v]enue is proper in this Court because 'a substantial part of the events or omissions giving rise to the claim occurred' in this district."  (Doc. #12, p. 8).

Because the Court's jurisdiction is founded only on diversity of citizenship, venue for this action is prescribed by 28 U.S.C. § 1391(b), which provides that the case may be brought only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The Eleventh Circuit has noted that there are "cases in which venue will be proper in two or more districts."  <u>Jenkins Brick Co. v. Bremer</u>, 321 F.3d 1366, 1371 (11th Cir. 2003).   In determining where venue is proper in these cases, the Eleventh Circuit stated that "[o]nly the events that directly give rise to a claim are relevant.  And of the places where the events have

taken place, only those locations hosting a "substantial part" of the events are to be considered." Id. Moreover, courts in this district have found that "[a] plaintiff is not required to select the venue with 'the most substantial nexus to the dispute,' as long as it chooses a venue where a substantial part of the events giving rise to the claim occurred." Careplus Health Plans, Inc. v. Crespo, 2006 WL 1382102 (M.D. Fla. May 19, 2006) (citing Morgan v. North Miss. Med. Ctr., Inc., 403 F. Supp. 2d 1115, 1122 (S.D. Ala. 2005)).

In this case, it appears that the Plaintiff "choose a venue where a substantial part of the events giving rise to the claim occurred." Specifically, many of the events surrounding the transfer of the Condo occurred in Lee County, Florida. For example, the "Quit Claim Deed in Lieu of Foreclosure" was completed and recorded in Lee County, Florida. The Note and Mortgage were assigned from SunTrust Bank to Park Bank and then from Park Bank to Development Opportunities, LLC in Lee County, Florida. Furthermore, the Note and Mortgage assignment and sale of the Condo to a third-party were conducted in Lee County. Therefore, because the actions surrounding the Condo, which constitute a substantial part of the events giving rise to the claim, occurred in Lee County and gave rise to the Plaintiff's Claim, the Court recommends that venue is proper in this Court and the Motion to Dismiss on these grounds be denied.

In addition, under 28 U.S.C. § 1404(a), a federal district court sitting in diversity may, "[f]or the convenience of the parties and witnesses, in the interest of justice, [ ] transfer any civil action to any other district or division where it might have been brought." The standard for transfer under section 1404(a) gives broad discretion to the trial court, which will be overturned only for abuse of discretion. See Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991).

"The question of whether to transfer venue is a two-pronged inquiry; first, the alternative venue must be one in which the action could originally have been brought by the plaintiff, and the second prong requires courts to balance private and public factors to determine if transfer is justified." <u>Mason v. Smithklein Beecham Clinical Laboratories</u>, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).   The factors to consider are: (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of service of process to compel the presence of unwilling witnesses, (5) the cost of obtaining the presence of witnesses, (6) the public interest, and (7) all other practical problems that make trial of the case easy, expeditious, and inexpensive.  <u>Stateline Power Corp. v. Kremer</u>, 404 F. Supp. 2d 1373 (S.D. Fla. 2005).

Furthermore, "the Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions, stating that '[t]he plaintiff's choice of forum should not disturbed unless the movant can show that it is clearly outweighed by other considerations.'" <u>Id</u>. "In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show that the balance of convenience is 'strongly in favor' of the transfer."  <u>Id</u>. (citation omitted). <u>See</u> <u>Robinson v. Giarmarco & Bill, P.C.</u>, 74 F.3d 253, 260 (11th Cir. 1996) (holding that plaintiff's choice of forum should not be disturbed unless it is "clearly outweighed" by other considerations); <u>Oiler v. Ford Motor Co.</u>, No. 92-523-CIV-T-17A, 1994 WL 143017, at *2 (M.D. Fla. 1994) ("unless the balance of convenience and interest of justice strongly favor the defendant, the plaintiff's choice of forum will rarely be disturbed").  "Transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." <u>See</u> <u>Robinson</u>, 74 F. 3d at 260.  Accordingly, "[o]n a motion to transfer venue of a case, the burden is on the defendant, when it is the moving party, to establish that there should be a change in

forum." <u>Mason</u>, 146 F. Supp. 2d at 1359.  "Defendants moving for transfer of venue have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum." <u>Id</u>.

In this case, the Plaintiff concedes that the first prong of the inquiry – that this action could originally have been brought in the Eastern District of Wisconsin – is satisfied, but he argues that venue is proper here because the real property which was the essential subject of the fraud and the racketeering was Florida property and the impact of the fraud was substantially performed here.  In deciding whether transfer of venue under § 1404 is proper in this case, the Court analyzes the factors articulated by other courts in the Eleventh Circuit.

Defendants have failed to demonstrate that consideration of the relevant factors establish that the Eastern District of Wisconsin is the more appropriate venue for this case and outweighs Plaintiff's choice of forum.  Even though some, if not most, of the potential witnesses reside in Wisconsin or Arkansas, any documents that are at issue – even if they are Wisconsin documents – can easily be brought to Florida.  Further, the Plaintiff alleges that a substantial part of the events giving rise to the claims occurred in Florida because the Plaintiff eventually transferred the Condo while residing in this State.  The Court agrees that many of the events took place in Florida; including the recordation of the foreign judgment by Park Bank in Lee County, Florida, the recordation of the Quit Claim Deed in Lee County Florida, the Note and Mortgage were assigned from SunTrust to Park Bank and then from Park Bank to Development Opportunities, LLC in Lee County, Florida, the Warranty Deed when the Condo was sold to a third-party was prepared in Lee County, Florida, and finally, the Condo was located in Lee County, Florida.

Therefore, based on the factors analyzed above and considering the totality of the circumstances, this Court finds insufficient reason to disturb the Plaintiff's choice of forum and

recommends that the Defendants' Motion to Dismiss for Improper Venue and Motion to Transfer Venue to the United States District Court for the Eastern District of Wisconsin be denied.

Accordingly, it is now **RECOMMENDED:**

(1) Defendant, Jeffrey T. DeBacco and Development Opportunities, LLC's Motion to Dismiss and for More Definite Statement or, alternatively, Motion to Transfer Venue (Doc. #8) be **GRANTED in part and DENIED in part.**

(2) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be **GRANTED** as Plaintiff has failed to sufficiently allege specific jurisdiction under the Florida Long Arm Statute, and the Complaint be dismissed without prejudice, with leave to amend.

(3) Defendant's Motion to Dismiss Plaintiff's RICO claim (Count I) for failure to state a claim upon which relief can be granted be **GRANTED**, with leave to amend.

(4) Defendants' Motion for More Definite Statement as to Plaintiff's Count II (fraud) be **GRANTED**, with leave to amend.

(5) Defendants' Motion to Dismiss for improper venue be **DENIED** and the request to transfer this action to the Eastern District of Wisconsin be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 6th day of August, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record